JOSE WILMER GAMEZ-REYES
Fed. Reg. ID. No. 79051-079
U.S.P. Victorville
P.O. Box 5500
Adelanto, CA. 92301

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
DEC 11 2006
DAVID J. MALAND, CLERK
BY
DEPUTY DC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| JOSE WILMER GAMEZ-REYES,<br>Plaintiff,<br>-against-<br>JONATHON DOBRE, WARDEN, AND UNITED STATES PENITENTIARY BEAUMONT, PRISON EMPLOYEES, ERIC SINONE, PRISON EMPLOYEE, RANDALL MITCHELL, PRISON EMPLOYEE, RONALD LEE JAMES, PRISON EMPLOYEE, CORY CLARK, PRISON EMPLOYEE, ANTONIO JENKINS, PRISON EMPLOYEE, WALT PRITCHARD, PRISON EMPLOYEE, ERIC JACK ELZA, PRISON EMPLOYEE, THOMAS DELUNA, PRISON EMPLOYEE, CHRISTOPHER TURNER, PRISON EMPLOYEE, | CASE NUMBER:<br>1:06CV0799<br><br>COMPLAINT PURSUANT TO BIVENS V. SIX UNKNOWN AGENTS, 403 U.S. 388, (1971), 28 U.S.C. § 1331 FOR DAMAGES AND INJUNCTIVE RELIEF<br>DEMAND FOR JURY TRIAL OF SIX (6) ON ALL ISSUES<br><br>COMPLAINT FOR MONEY DAMAGES |

EMPLOYEE,CHRISTOPHER
TURNER,PRISON EMPLOYEE,
GERARDO MONROY,PRISON
EMPLOYEE,AND DOES I-
XXX, individually and
in their official
capacities,
DEFENDANTS.

______________________________/

I. Complaint

PLAINTFF, WILMER, GAMEZ-REYES, ("Gamez-Reyes"), by and through a <<Personero>> but in <<forma propria persona>> representation, complains against United States Bureau of Prisons-United States Penitentiary in Beaumont, Texas, its officials, employees, and for his Complaint state as follows:

II. Parties, Jurisdiction and Venue

1. Plaintiff, Mr. Gamez-Reyes, was confined at the United States Penitentiary (Medium) at Beaumont, Texas, on September 9,1999, serving a prison term for illegal reentry. Plaintiff is currently confined at the United States Penitentiary Victorville in the County of San Bernadino, State of California.

2. Plaintiff, Mr. Jose Wilmer Gamez-Reyes, ("Gamez-Reyes"), is and was at all times mentioned herein, an adult over the age of 18 and national of the Republic of Honduras.

3. DEFENDANT, JONATHON DOBRE, was at all relevant times herein warden for the United States Bureau of Prisons

("B.O.P."), of the United States Penitentiary Complex ("U.S.P."), in Beaumont, Texas, with the responsibility for operating and maintaining detention, penal, and corrective institutions within the United States Eastern District of Texas. Defendant manages its day-to-day operations and executes its policies.

4. DEFENDANT, ERIC SINONE, was at all relevant times herein employed by the BOP as Recreation Specialist of the United States Penitentiary Beaumont, Texas.

5. DEFENDANT, RANDALL MITCHELL, was at all relevant times herein employed by BOP as Case Manager of the United States Penitentiary Beaumont, Texas.

6. DEFENDANT, RONALD LEE JAMES, was at all times relevant herein employed by BOP as Unit Manager of the United States Penitentiary Beaumont, Texas.

7. DEFENDANT, CORY CLARK, was at all relevant times herein employed by BOP as Case Manager for the United States Penitentiary Beaumont, Texas.

8. DEFENDANT, ANTONIO JENKINS, was at all relevant times herein employed BOP as Lieutenant-Correctional Supervisor, of the United States Penitentiary Beaumont, Texas.

9. DEFENDANT, WALT PRITCHARD, was at all relevant times herein employed by BOP as Facility Manager for the United States Penitentiary Beaumont, Texas.

10. DEFENDANT, ERIC JACK ELZA, was at all relevant times herein employed by BOP as Special Investigative Supervisor of the United States Penitentiary Beaumont, Texas.

11. DEFENDANT, THOMAS DELUNA, was at all relevant times herein employed by BOP as Correctional Officer for the United

States Penitentiary Beaumont, Texas.

12. DEFENDANT,CHRISTOPHER TURNER, was at all relevant times herein employed by BOP as Correctional Officer for the United States Penitentiary Beaumont, Texas.

13. DEFENDANT, GERARDO MONROY, was at all relevant times herein employed by BOP as Correctional Officer for the United States Penitentiary Beaumont, Texas.

14. Plaintiff is unaware of the identities and capacities of DEFENDANTS, DOES I-XXX at this time, and request leave to amend this complaint when the information is ascertained.

15. This action "arises" under the... laws of the United States for Article III purposes and grounded upon 28 U.S.C. Section 1331, civil rights statutes, and pertinent declarations, documents and practices constituting international law of human rights and and treaty of the United States, as well as Article II, section 2, and the Supremacy Clause of the United States Constitution and is brought pursuant to <<Bivens>> to remedy the deprivation, under federal law, of rights guaranteed by the Fifth and Eighth Amendments to the United States Constitution and Treaty of the United States. This court has jurisdiction over this action pursuant to 28 U.S.C Section 1331 (federal question involving interpretation of federal statute and treaty ),(28 U.S.C. Section 1350 "ATS" for tort committed in violation of a treaty of the United States), 28 U.S.C. Section 1343 (deprivation of civil rights), 28 U.S.C. Section 1361 (mandamus to compell an officer or employee of the United States or any agency thereof to preform a duty owed to the plaintiff).

16. Plaintiff's claim for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rules 65 of the Federal Civil Procedure.

17. INTRADISTRICT ASSIGMENT in this matter is properly assigned to the Eastern District of Texas, Beaumont Division.

18. This cause of action arose in the Eastern District of Texas. Therefore, venue is proper under 28 U.S.C. 1391(b) and (e).

III. PREVIOUS LAWSUITS BY PLAINTIFF

19. Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment. Plaintiff on 06/17/2002 filed 510 Prisoner:Vacate Sentence:Case in other court:USDC Beaumont Div, #1:99-cr-153(1).

IV. INTRODUCTION

20. The Complaint raise's allegations that prison officials are liable for their failure to protect prisoners from violance at the hands of other inmates and that they where deliberately indifferent to substancial risk of serious harm: and for not providing an adequate system of classification of prisoners. And that as result of these prison conditions and inadequate classification of prisoners, it is alleged was proximate cause, if not the direct cause, giving rise to violent confrontation between known rival prison gangs, and that the prison officials were aware of inmate-on-inmate

"deliberately indifferent", because they knew of an "excessive risk to inmate health and safety" and disregarded that risk. Plaintiff's <<Bivens>> action arise's under the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff as an inmate was denied personal safety. The Supreme Court has held that a violation of the Eighth Amendment's proscription against cruel and unusual punishment gives rise to cause action under <<Bivens>>. The Complaint also gives rise to claim that no federal official ever advised him of his rights under the Vienna Convention to contact the Honduras consulate for assistance and that federal law enforcement agencies and their respective employees, officials, ever contacted the Honduras consulate on their own initiative on plaintiff's behalf.

V. STATEMENT OF FACTS

21. On October 7,1999, a Federal Grand Jury for the Eastern District of Texas returned a two-count Indictment that charged Jose Wilmer Gamez-Reyes with Count One charge of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. Section 113(a)(3) and Count 2 that charged Gamez-Reyes with assault resulting in serious bodily injury. Both offences were based on the same incident, and occured on September 9,1999. Then on February 15,2000, Gamez-Reyes plead "not guilty" and proceeded to trial. The jury convicted him of both counts in the indictment. The District Court subsequently sentenced Gamez-Reyes to 115-months term of imprisonment for each of the count, and to be

District Court subsequently sentenced Gamez-Reyes to 115-months term of imprisonment for each of the count, and to be served concurrently.

22. On September 9,1999, Gamez-Reyes was an inmate at the United States Penitentiary (Medium) in Beaumont, Texas, serving a prison term for illegal reentry. The Defendant herein named as recreational specialist at the facility observed several inmates involved in an altercation. It was disputed how many inmates were involved in the altercation. A guard observed inmate Ismael Arellano-Gutierrez being attacked with a baseball bat. Mr. Arellano did not testify at trial. After the altercation, guards seized inmates Radney Montgomery-Castillo, Jose Jaramillo-Hernandez, and Gamez-Reyes. Mr. Montgomery-Castillo plead guilty to the charges related to this incident and testified at Mr. Gamez-Reyes' trial that he acted alone. The assault on Mr. Arellano comprised the charge to which Mr. Gamez-Reyes plead guilty.

COUNT ONE:

23. Plaintiff contends that his arrest, detention, conviction and sentence, constitute arbitrary arrest and detention in violation of international law. Plaintiff urges that his continued detention is in contravention of fundamental human justice as embodied in established principals of international law. Cited as legal authority are The Universal declaration of Human Rights, U.N. Doc. A/801 (1948) and The American Convention of Human Rights, 77 Dept. of State Bulletin 28 (July 4,1977), signed by President Carter on July

1,1977. International law secures to plaintiff the right to be free from arbitrary detention and his right is being violated. Tribunals enforcing international law have also recognized arbitrary detention as giving rise to a legal claim. The arbitrator in <<France ex rel. Madame Julien Chevreau>>, opined that the arbitrary arrest, detention or deportation of a foreigner may give rise to a claim under international law and that if the detention is unnecessarly prolonged, a claim is justified. The arbitrator further stated that a claim is justfied if the rule is not observed that the prisoner should be treated in a manner appropriate to his situation, and corresonding to the standard customarily accepted amoung civilized nations. M.S. Dept. of State, file no.500. AIA/1197, cited in Whiteman, M., Damages in International Law (Washington 1937).

VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Plaintiff contends that because these matters mainly involves judicial matters that inmate grievance procedure is not required to contest determination that could not be appealed using the prison grievance procedure.

25. Plaintiff is a foreign national and is legally unsophisticated and of limited litracy in general and in English to prepare a grievance. The purpose of this Complaint involves matters concerning judicial proceeding and their is no administrative remedy available. Plaintiff contends that there excist a high degree of deference to prison grievance systems. This is based in part on the view that they are not

as competent as federal courts to resolve constitutional questions and because they do not provide all the procedural safegards of formal judicial proceedings, including the constitutionally mandated protections that must be afforded to criminal defendants, neither of which is true of a prison grievance system.

COUNT TWO:

26. The specific violation of treaty rights claimed are the failure of Bureau of Prisons, ("BOP"), Department of Justice, ("DOJ"), employees and officials to notify Gamez-Reyes of his rights under the Vienna Convention on Consular Relations, ("VCCR"), 21 U.S.T. 77. The rights of consular notification and consultation enumerated in the VCCR are reinforced by federal regulations designed to implement these treaty obligations pursuant to Title 28, Code of Federal Regulations, Section 50.5. The C.F.R. requires the arresting agent "[i]n every case in which a foreign national is arrested the arresting officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given" id. Section 50.5 (a)(1). The C.F.R. requires the arresting agent to "inform the nearest U.S. Attorney of the arrest and the arrested person's wishes regarding consular notification". Id. Section 50.5(a)(2). The U.S. Attorney must then "notify the appropriate consul except where he is informed that the foreign national does not desire such notification to be made". Id. Section 50.5(a)(3). Plaintiff in action raises

claim that the named Defendants and an unknown number of unnamed employees, officials, of the B.O.P. and D.O.J. disregarded the established procedure under federal law as well as having violated Plaintiff rights under treaty of the United States of America. Plaintiff claims that BOP/DOJ entered into an agreement that violated a federal statute, 28 USC 50.5.

27. Plaintiff's Complaint contends that he has an individual right of action on the basis that when the United States Senate gave its advise and consent to the ratification of the VCCR in 1969, 115 Cong. 30997 (by a vote of 81 to 0), it became the "supreme law of the land", binding on the states. U.S. Const. art VI,cl.2; Whitney v. Robertson, 124 U.S. 190, 194, 31 L.Ed. 386, 8 S.Ct. 456 (1888)("by the constitution a treaty is placed on the same footing and made of like obligation, with an act of legislation".); Breard v. Green, 523 U.S. 371, 376, 140 L.Ed 2d 529 118 S.Ct. 1352 (1998)(per curiam)(stating that treaties are "on full parity" with acts of Congress)(citing Reid v. Covert, 354 U.S. 1, 18, I L.Ed. 2d 1148, 77 S.Ct 1222 (1957)(plurality opinion)). Plaintiff Complaint raises' question if whether a private civil action independent of the criminal proceedings may be based on the VCCR?

28. Plaintiff's contentions would be incomplete without any discussion and acknowledgement that the international body with the authority to render binding interpretations of the VCCR, the International Court of Justice (ICJ), has definitively annouced that Article 36 of the VCCR gives rise to individually enforceable rights. See, LaGrand Case

(Germany v. United States of America), 2001 I.C.J. 104, at P 77 (Judgement of June 27), which held that "Article 36, paragraph 1, creates individual rights, which...which may be invoked in this Court by the national State of the detained person. These rights were violated in the present case.

29. Lest it be deemed by the Court that were any doubt that the rights that could be invoked by the national state of the detained person before the ICJ were somehow insulated from recognition in the national courts of the detaining state, the ICJ clarified in Case Concerning Avena and Other Mexican Nationals (Mexico v. United States), 2004, ICJ No.128 (Judgement of March 3), that the United States had an obligation to permit the detainees to raise their Article 36 claims in the national courts. See e.g., Avena, P 139 ("What is crucial in the review and reconsideration process is the excistence of procedure which guarantees that full weight is given to the violation of the rights set forth in the Vienna Convention, what ever maybe the actual outcome of such review and consideration."). At the time the ICJ decided <<LaGrand>> and <<Avena>> the United States had expressly consented to the Courts jurisdiction to resolve disputes under the VCCR. See, Vienna Convention on Consular Relations, Optional Protocol Concerning the Compulsory Settlement of Disputes, Apr.24,1963, 21 U.S.T. 326. Although the State Department, at President Bush's instruction, has since notified the United Nations (the official depository for the Optional Protocol) that the United States was withdrawing from the Protocol, the President announced at the same time that he was directng the state courts to follow <<Avena>>. See John R. Crook (ed),

Contemporary Practice of the United States Relating to International Law: U.S. Strategy for Responding to ICJ's Avena Decision, 99 AM J. INT'L L 489, 489-90 & nn. 4, 7, (2005).

30. Plaintiff contends' that this action is an acknowlegement on the part of the Executive Branch that the withdrawl from the Optional Protocol is a prospective action only, and that it has no effect on disputes that were tendered to and finally decided by the ICJ before the withdrawl. Also the Plaintiff contends that the United States is bound by the ICJ ruling in cases where it consented to the court' jurisdiction just as it would be bound by any arbitral procedure to which it has consented.

31. This Complaint seeks a decision upon whether Mr. Gamez-Reyes is entitled to enforce his individual right under the VCCR in a private action before this Court. See, Alexander v. Sandoval, 532 U.S. 275, 286-87, 149 L.Ed.2d 517,121 S.Ct. 1511 (2001)(emphasizing, in the context of statutory interpretation, that the judicial task is to decide both whether Congress intended to create a private right and whether it intended to create a private remedy). May it please this Court to note that in this connection the Plaintiff is relying on a particular treaty for his claim, rather than the law of nations. It is contended that there is no need for him to show that as to count two the violation about which he is complaining was "shockingly egregious", such as has been attempted in other cases to raise claims under the "law of nations" half of the Alien Tort Statute, ("ATS"), not the treaty half. In that, the language has

almost certainly been superseded by the test announced for "law of nations" claims as can be seen generaly for example in Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed 2d 718 (2004). Treaty-based claims are better analyized in a manner analogus to claims under statutes: if there is an implied private right of action, the claimant can go forward; if not, he must rely on public enforcement measures to vindicate his rights.

32. Plaintiff contends that in the area of statutory construction, it is the intent of Congress that governs whether a private action excists. See <<Alexander>>, supra, Touche Ross & Company v. Redington, 442 U.S. 560, 575, 61 L.Ed 2d 82, 99 S.Ct. 2479 (1979). By parity of reasoning, when construing a treaty, courts must decide whether the drafters of the treaty intended to make a particular part of it privately enforceable. The VCCR does not spell out particular methods of enforcement but Treaties after all, are signed by countries with differing legal systems that provide different kinds of remedies. What Article 36 of the VCCR does provide, however, is an instruction that "the rights referred to in paragraph 1 of this Article shall be excercised in conformity with the laws and regulations of the receiving State, subject to proviso, however, that said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under the Article are intended." VCCR, art. 36 (emphasis added). This means that a country may not reject every single path for vindicating the individual's treaty rights. In absence of any administrative remedy or other alternative to measures that have already

been rejected (such as suppression of evidence), damages actions are the only avenue left.

33. This action arises and is brought pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388, (1971), to remedy the deprivation, under color of federal law, of rights guaranteed by the Fifth, Eighth Amendments to the United States Constitution as to count one and Treaty of the United States as to count two. Any act by the Defendants which is proscribed by the Constitution of the United States and by cognizable principal of international law fall within the rubric of "cruel and inhuman and degrading treatment" and is actionable before federal court under the Alien Tort Claims Act. U.S.C.A. Const. Amends. 5 and 8. The case cited above in this Complaint which condemned protracted detention and detention beyond a reasonable time for deportation display our country's own judiciary's abhorrence of arbitrary detention. Principals of international law may be decerned from an over view of express international conventions, the teachings of legal scholars, the general custom and practice of nations and relevant judicial decisions. Filartiga v. Pena-Irala, 630 F.2d 876, (2d Cir. 1980). When from this overeview a wrong is found to be of mutual, and not merely several, concern among nations, it may be termed an international law violation, Id. International law is a part of the laws of the United States which federal courts are bond to acertain and administer in an appropriate case. The Nereide, 13 U.S. (9 Cranch) 388, 422, 3 L Ed. 769 (1815); The Paquete Habana, 175 U.S. 677, 20 S. Ct.290, 44 L. Ed. 320 (1900); Filartiga v. Pena-Irala, supra. A review of the sources from which

customary international law is derived clearly demonstrates that arbitrary detention is prohibited by customary international law. The violation of claimants rights under Art. 36 of the VCCR have taken the form of jus cogens norms and constitutes violation of human rights. If the continued detention of an alien cannot be said to violate the United States Constitution or statutory laws, it is judicially remedial as a violation of international law. Therefore, Plaintiff's continued detention on restrictive status in a maximum security prison, wrongfully convicted of a crime in this country and/or wrongful determination having been made that he is risk to security, is unlawful; and such amounts to an abuse of discretion on the part of the Attorney General and his deligates and DOJ-BOP employees, officials. The international human rights movement is the effectiveness of international agreements in protecting individuals in the nations which are most committed to human rights. The United States preaches incessantly about the superiority of its system as a bulwark for human rights. Our Constitution it is claimed, is a remarkable document for many reasons, but particularly because it is a blueprint for the protection of individuals against goverment infringement.

VII. STATEMENT OF CLAIM

34. PLAINTIFF reallege and incorporate by reference paragraphs 1-33 herein.

35. At all times relevant herein, DEFENDANTS, were "persons" for the purposes of 42 U.S.C. Section 1983 and acted under

color of law to deprive plaintiff of his constitutional rights. "Color of law" jurispridence of Section 1983 is relevant guide to whether Defendant has engaged in international law violations requiring "official action" for purposes of jurisdiction under the Alien Tort Claims Act. 28 U.S.C.A. Section 1350; 42 U.S.C.A. Section 1983. For purposes of liability under the Torture Victim Protection Act, ("TVPA"), United States officials acted under color of law in subjecting plaintiff to cruel and inhuman degrading treatment, arbitrary detention in the United States, and Plaintiff was in the Defendants official "custody" for purpose of the Act, where the Defendant had the authority and discretion to order that Plaintiff be released. Torture Victim Protection Act of 1991, Section 3(a),(b)(1), 28 U.S.C.A. Section 1350 note.

VIII. PRAYER FOR REIEF

36. PLAINTIFF seeks a declaration that the BOP/DOJ agreement and the consequent policy and practice of not conforming to practice under international law is illegal and that said practice in particular implements obligations undertaken by the United States pursuant to treaties that obligate the United States to respect human rights of prisoners: and with respect to procedure for consualr notification where nationals of foreign countries are arrested by officials of BOP/DOJ on charges of criminal violations in order to conform with practice under international law and that implements obligations undertaken by the United States pursuant to

to compel an officer employee of the United States or agency thereof to preform a duty owed to the plaintiff. Plaintiff seeks an order requiring the BOP/DOJ to correct all none compliance with established procedure for consular notification by its agencies, as has been required by executive order.

38. PLAINTIFF requests compensatory damages in excess of $1,000,000 and punitive damages of at least $1,000,000 for CRUEL, INHUMAN OR DEGRADING TREATMENT. PLAINTIFF requests 500,000 in compensatory damages and 500,000 in punitive damages for ARBITRARY DETENTION. PLAINTIFF seeks compensatory damages in excess of 1000,000, and punitive damages in excess 1000,000, for violation of VCCR, count two.

PLAINTIFF also request reasonable attorneys' fees cost and any other relief which the Court deems proper.

Dated: November 13,2006:

Plaintiff:

**DECLARATION UNDER PENALTY OF PURJURY**

**I declare (or certify, verify, or state) under penalty of purjury that the foregoing [Complaint] is true and correct. 28 U.S.C. §1746; 18 U.S.C. §§1621, et seq.**

**Executed at United States Penitentiary Victorville on 21 th day of November, 2006.**

Plaintiff, Jose Wilmer Gamez-Reyes